Ryan E. Cosgrove, Bar No. 277907
ryan.cosgrove@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
19191 South Vermont Avenue, Suite 900
Torrance, California 90502
Tel: (424) 221-7400 / Fax: (424) 221-7499

Denise M. Gunter (*pro hac vice*)
denise.gunter@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
380 Knollwood Street, Suite 530
Winston-Salem, North Carolina 27103
Tel: (336) 774-3322 / Fax: (336) 774-3372

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLIGHTBLITZ, INC., a California Corporation; DAVID KAYE, an individual, formerly doing business as FLIGHTBLITZ,<br><br>　　　Plaintiffs,<br><br>　vs.<br><br>TZELL TRAVEL, LLC, a New York limited liability company; TZELL HOLDINGS, LLC, a Delaware limited liability company; TRAVEL LEADERS GROUP, LLC, D/B/A INTERNOVA TRAVEL GROUP a Delaware limited liability company; TZELL TRAVEL GROUP, LLC, a business entity of unknown form;<br><br>　　　Defendants. | CASE NO. 2:21-cv-02116-CBM-KES<br><br>**DEFENDANTS' NOTICE OF MOTION AND 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**DATE:** September 21, 2021<br>**TIME:** 10:00 a.m.<br>**JUDGE:** Hon. Consuelo B. Marshall<br>**COURTROOM:** 8B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 21, 2021 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8B of the above-captioned Courthouse, located at 350 W. 1st Street in Los Angeles, California, Defendants will and hereby do move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiffs' First Amended Complaint for failure to state a claim.

This motion is based on this Notice of Motion, Defendants' following Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 9, 2021.

DATED: August 19, 2021

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: _/s/ Ryan E. Cosgrove_

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Denise M. Gunter (*pro hac vice*)

*Attorneys for Defendants*

i

1

# **TABLE OF CONTENTS**

2

**Page**

3    TABLE OF AUTHORITIES ........................................................................ iii

4    MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

5         I.      INTRODUCTION ................................................................ 1

     II.    FACTS ALLEGED BY PLAINTIFFS ................................. 2

6             A.   The Parties and the Concierge Travel Industry ............................ 2

7             B.   The 2015 Agreement Between FlightBlitz and Tzell ...................... 2

8             C.   FlightBlitz and Non-Party All Star Travel Group ....................... 4

9             D.   The Claims ........................................................................ 5

     III.   ARGUMENT ................................................................... 6

10

11            A.   THE COMPLAINT FAILS TO STATE ANY CAUSE OF ACTION AND SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)...... 6

12               1.   Governing Legal Standard ................................. 6

13            B.   PLAINTIFFS DO NOT STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT ........................................................ 8

14               1.   Tzell and TLG ................................................ 9

15               2.   Tzell, TLG and ASTG ...................................... 11

16            C.   PLAINTIFFS' CARTWRIGHT ACT CLAIM ALSO FAILS. ................. 16

17            D.   PLAINTIFFS' BOYCOTT ALLEGATION ALSO FAILS TO STATE A CLAIM ................................................................ 17

18   CONCLUSION ................................................................................... 18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332 (1982)...............................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................6, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................*passim*

*Bondi v. Jewels By Edwar, Ltd.*, 267 Cal. App. 2d 672 (1968)...............................17

*Brantley v. NBC Universal, Inc.*, 675 F.3d 1192 (9th Cir. ), *cert. denied*, 568 U.S. 998 (2012).................................................................................8

*Calculators Haw., Inc. v. Brandt, Inc.*, 724 F.2d 1332 (9th Cir. 1983) .................10

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001)...................................1, 18

*Colonial Med. Grp., Inc. v. Catholic Health Care W.*, 444 Fed. Appx. 937 (9th Cir. 2011)..................................................................................................17

*Conservation Force v. Salazar*, 646 F.3d 1240 (9th Cir. 2011), *cert. denied*, 565 U.S. 1261 (2012)....................................................................................6

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ......................*passim*

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ..................................................7

*Cty. of Tuolumne v. Sonora Comm. Hosp.*, 236 F.3d 1148 (9th Cir. 2001)..................................................................................................................13, 17

*Darush v. Revision LP*, No. CV 12-10296-GAF, 2013 WL 1749539 (C.D. Cal. Apr. 10, 2013)...................................................................................17

*Dimidowich v. Bell & Howell*, 803 F.2d 1473 (9th Cir. 1985) ...............................17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014)...................................................................................................................6

*Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir.), *cert. denied*, 540 U.S. 940 (2003)..............................................................................8, 10

*Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171 (1999)............16, 17

*G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256 (1983) .........................................16, 17

*In re Circuit Breaker Litigation*, 984 F. Supp. 1267 (C.D. Cal. 1997) (Marshall, J.)..................................................................................................................8

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008), *cert. denied*, 556 U.S. 1182 (2009).................................................................................7

iii

**DEFENDANTS' NOTICE OF MOTION AND 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027 (9th Cir. 2005) .................................................................................. 11

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ................................... 15

*Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614 (9th Cir.1979), *cert. denied*, 447 U.S. 906 (1980) .............................................................. 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .......................................................................................... 6

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................. 7

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ................................. 7

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ................. 12, 13, 18

*Moss v. United States Secret Service*, 572 F.3d 962 (9th Cir. 2009) ....................... 7

*Name.Space, Inc. v. ICANN,* 795 F.3d 1124 (9th Cir. 2015) .................................. 7

*Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.*, 671 F. Supp. 1525 (C.D. Cal. 1987) .............................................. 11, 13

*Orion Tire Corp. v. General Tire, Inc.,* No. CV 92-239-AAH (EEX), 1992 WL 295224 (C.D. Cal. Aug. 17, 1992) ..................................... 11

*Roth v. Rhodes*, 25 Cal. App. 4th 530 (1994) ....................................................... 17

*The Jeanery, Inc v. James Jeans, Inc.*, 849 F.2d 1148 (9th Cir. 1988) .............. 8, 13

*Thomsen v. W. Elec. Co.*, 680 F.2d 1263 (9th Cir.), *cert. denied*, 459 U.S. 991 (1982) ................................................................................ 10

*United States v. Colgate & Co.*, 250 U.S. 300 (1919) ........................................... 18

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......................................... 3

*Whitaker v. Tesla Motors, Inc.* 985 F.3d 1173, (9th Cir. 2021). ........................... 15

*Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM (Ex), 2021 WL 3355279 (C.D. Cal. Apr. 14, 2021) ............................................. 3

**Statutes and Constitutional Provisions**

Cal. Bus. & Prof. Code § 16720 *et seq* ....................................................... *passim*

15 U.S.C. § 1 ............................................................................................. *passim*

15 U.S.C. § 15(a) ................................................................................................ 5

iv

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................*passim*

Fed. R. Civ. P. 56 ................................................................................ 3

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3

    In this purported antitrust action, Plaintiffs claim that Defendants engaged in a

4 conspiracy to "force" a non-party to pay lower commissions to Plaintiffs, in violation

5 of California's Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq*., and Section 1

6 of the Sherman Act, 15 U.S.C. § 1.  First Amended Complaint, ECF 38, ¶ 77 ("FAC").

7 Under the Cartwright Act and the Sherman Act, an antitrust conspiracy requires an

8 agreement by at least two separate actors legally capable of conspiring.  Unilateral

9 action by a single entity is not a conspiracy.  *Copperweld Corp. v. Indep. Tube Corp.*,

10 467 U.S. 752, 767-68 (1984); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 369

11 (2001).  The problem here is that Plaintiffs have not alleged an agreement between

12 two separate actors legally capable of conspiring.

13

    At most, Plaintiffs have only alleged that as a party with a legal right to do so,

14 Defendants allegedly objected when they learned about Plaintiff FlightBlitz, Inc.'s

15 ("FlightBlitz") attempted breach of its *exclusive* agreement, which then caused a non-

16 party affiliate of Tzell (All Star Travel Group ("ASTG")) to revise an offer to

17 Plaintiffs in a way that was more favorable to ASTG.  Not only do these allegations

18 not form a viable claim (*i.e.*, Defendants had a legal right to object), this is purely

19 unilateral conduct that is simply not actionable under the Cartwright Act or the

20 Sherman Act. Accordingly, Defendants respectfully seek an order pursuant to Fed. R.

21 Civ. P. 12(b)(6) dismissing the FAC in its entirety with prejudice.

22

23

24

25

26

27

28

## II.   FACTS ALLEGED BY PLAINTIFFS[1]

### A.   The Parties and the Concierge Travel Industry

Plaintiffs allege Defendants are travel management companies ("TMC") specializing in selling concierge travel services and experiences, such as first/business-class airfares and vacation packages. FAC, ¶¶ 2-3. Concierge travel is a multibillion-dollar industry wherein common carriers pay commissions to travel agents, including TMCs, for selling airfare, hotel and cruise bookings. *Id*., ¶ 25. Plaintiffs allege Defendants are "host" TMCs that wholesale travel products and services to smaller agencies, called "hosted agents," that retail those products and services to consumers. *Id*., ¶¶ 4-5. FlightBlitz describes itself as a "hosted concierge travel agent" and Plaintiff David Kaye ("Kaye") as the "principal" of FlightBlitz. *Id.*, ¶¶ 22, 95. When travelers use concierge travel services, common carriers often pay a portion of the consumer's retail price to the travel agent as a commission. *Id.*, ¶ 32. Host agencies aggregate their purchasing power with that of the hosted agencies to receive greater commissions. *Id.*, ¶ 40. This arrangement benefits both the host and hosted agencies, and smaller travel agents usually transact business under host agencies. *Id.*, ¶¶ 39, 41-43.

### B.   The 2015 Agreement Between FlightBlitz and Tzell

Plaintiffs refer to Defendants Tzell Travel, LLC and Tzell Holdings, LLC collectively as "Tzell" and further describe Tzell as a "brand" of Defendant Travel

---

[1] The facts stated are those alleged in the FAC and are accepted as true only for the purposes of this Motion. Nothing herein is intended to signify Defendants' agreement with any allegation in the FAC. Likewise, the absence of discussion of any allegation in this Motion is not intended to signify Defendants' agreement with such an allegation; rather, the allegation was not germane to this Motion.

Leaders Group, LLC d/b/a Internova ("TLG").[2] *Id.*, ¶¶ 68, 70.[3] Plaintiffs state that "Tzell and/or TLG allow their numerous branches and/or hosted agents to sell airfares under Tzell and/or TLG's airline contracts." *Id.*, ¶ 81. Plaintiffs allege that FlightBlitz and Tzell were parties to a contract dated October 22, 2015 (the "2015 Agreement"). *Id.*, ¶ 118.[4] The 2015 Agreement provides in relevant part:



Exhibit 1, ¶ 1.a (emphasis added). The 2015 Agreement further provides that

---

[2] Through the frequent use of the grammatical conjunction "and/or," Plaintiffs refer to Tzell and TLG interchangeably throughout the FAC. *See, e.g.*, FAC ¶¶ 64-65, 81-82, 98-99, 105-107, 110-113, 127-129, 131, 133, 135.

[3] According to the FAC, the fourth Defendant, Tzell Travel Group, LLC, is a "name that the other Tzell Defendants transact under." *Id.*, ¶ 16. The FAC's Prayer for Relief does not seek any recovery from Tzell Travel Group, LLC. *Id.*, p. 23.

[4] Though not attached to the FAC, the 2015 Agreement is quoted and discussed in the FAC. *Id.*, ¶¶ 118-122. The Court therefore may properly consider the 2015 Agreement for the purposes of this Motion without converting it to a motion for summary judgment pursuant to Fed. R. Civ. P. 56. The 2015 Agreement is attached hereto as Exhibit 1. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM (Ex), 2021 WL 3355279, at *1 (C.D. Cal. Apr. 14, 2021).

1   ████████████████ Plaintiffs allege that the 80%-20% commission split "is a
2   relatively common arrangement between agents." FAC, ¶ 87, n.2.

3        **C.**    **FlightBlitz and Non-Party All Star Travel Group**

4        In late 2017, while still under its *exclusive* contract with Tzell, FlightBlitz
5   sought to negotiate larger commission percentages ("commission splits") on its airfare
6   sales. *Id.*, ¶ 92. To that end, FlightBlitz and non-party All Star Travel Group
7   ("ASTG"), described as a partially-owned "branch" of Tzell that shared office space
8   with FlightBlitz, allegedly "shook hands" on ASTG's oral offer to pay FlightBlitz
9   ████████████████████████████████████████████████████████
10  ████████████████████████████████████████████[5] *Id.*, ¶¶ 93-96.[6]
11  When ASTG informed TLG and Tzell's management of its arrangement with
12  FlightBlitz, Tzell and/or TLG allegedly "objected." *Id.*, ¶¶ 97- 98. ASTG then
13  decided to revise its oral proposal to FlightBlitz in a way that was more favorable to
14  ASTG. *Id.*, ¶¶ 101, 107. FlightBlitz complains that "[b]ut for TLG's interference,
15  FlightBlitz's March 7, 2018 ASTG Contract would have offered ████████████
16  ████████████████████████████ *Id.*, ¶ 102.

17       The FAC does not allege that Defendants Tzell and TLG directed ASTG to take
18  any action or that Tzell, TLG and ASTG agreed on anything regarding FlightBlitz.
19  Rather, the FAC describes the mental impressions of and statements by David Odaka,
20  ASTG's then principal. *Id.*, ¶ 95. According to the FAC, Mr. Odaka was "concerned"
21  that he and/or ASTG would be "blacklisted" by TLG and/or Tzell for offering
22  FlightBlitz more than an 80%-20% commission split, "and that, therefore, Odaka
23  needed to obtain TLG and/or Tzell's blessing before inking the contract with
24  FlightBlitz." *Id.*, ¶¶ 105-106. According to Plaintiffs' allegations, Mr. Odaka's ████

---

25
26  [5] "Overrides" are contingent commissions that are paid only after certain sales, market share or
    volume levels have been surpassed on defined routes. *Id.*, ¶ 46.

27  [6] The FAC does not provide any written evidence of ASTG's alleged oral offer to FlightBlitz.

28

███████████████ to FlightBlitz violated TLG's "unwritten rules," "verbal agreements" and "very strong expectation" that forbade branches from offering deals exceeding 80%. *Id.*, ¶¶ 126-127. The FAC describes Mr. Odaka offering a different deal to FlightBlitz, allegedly to obtain "New York's agreement." *Id.*, ¶ 110. This new deal involved somewhat lower commission splits and FlightBlitz giving ASTG access to FlightBlitz's tour fares, to which ASTG did not have access previously. *Id.*, ¶¶ 107, 110. Thus, the revised deal was more favorable to ASTG. According to FlightBlitz, FlightBlitz was "forced" to provide ASTG access to tour fares, when it otherwise would have retained independent control and pricing in reselling tour fares to ASTG. *Id.*, ¶ 112. Later, when Tzell acquired 100% control of ASTG, Tzell terminated the ASTG-FlightBlitz contract and allegedly began implementing an "anti-FlightBlitz boycott by forbidding Tzell and/or TLG's branches and [independent contractors] from doing business with FlightBlitz, as well as with entities that had *relationships* with FlightBlitz." *Id.*, ¶ 129 (emphasis in original). The FAC does not allege how this alleged boycott was implemented, to whom the alleged "boycott instructions" were communicated or whether anyone actually followed or agreed to the alleged "boycott instructions." *Id.*, ¶ 130.

### D.    The Claims

Based on these facts, Plaintiffs attempt to assert a claim of vertical price fixing between Tzell, TLG and non-party ASTG under the Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq.* and Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.*, ¶¶ 89-149[7]. Although the FAC mentions an alleged boycott against FlightBlitz, it does not allege a separate boycott claim. *Id.*, ¶¶ 129-130.

---

[7] The FAC also refers to Clayton Act Section 4, 15 U.S.C. § 15(a), which establishes a private cause of action for damages under the federal antitrust laws. *See, e.g.*, FAC p. 1, ¶ 148. Section 4 does not itself establish a substantive cause of action, and the FAC's Second Cause of Action appears to be premised on an alleged vertical price fixing conspiracy in violation of Section 1 of the Sherman Act. *Id.*, ¶ 123.

### III.   ARGUMENT

#### A.   THE COMPLAINT FAILS TO STATE ANY CAUSE OF ACTION AND SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

##### 1.   Governing Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011), *cert. denied*, 565 U.S. 1261 (2012) (quoting *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

When considering whether an allegation is plausible, courts must consider "an obvious alternative explanation" for the defendant's actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (quoting *Twombly*, 550 U.S. at 567). Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "'plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (quotation and citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true the factual allegations in the complaint and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

6

DEFENDANTS' NOTICE OF MOTION AND 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

F.3d 1025, 1031 (9th Cir. 2008).    However, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)[8].  Mere conclusory allegations of law, labels such as "conspiracy," "price fixing" and "boycott," and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion.  *See, e.g.*, *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), *cert. denied*, 556 U.S. 1182 (2009).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Here, Plaintiffs fail to allege an agreement, which is an essential element of their price fixing allegations under both the Cartwright Act and Section 1 of the Sherman Act.  Plaintiffs have instead alleged only unilateral action, which does not state a price fixing claim under either the Cartwright Act or Section 1 of the Sherman Act. Plaintiffs' state and federal claims are based on the same set of facts.  Since the Cartwright Act is analogous to the Sherman Act and decisions interpreting the Sherman Act may be helpful to the Court in considering Cartwright Act claims, *see, e.g., Name.Space, Inc. v. ICANN,* 795 F.3d 1124, 1131 n.5 (9th Cir. 2015)*; McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 n.4 (9th Cir. 1988), the argument below begins with the Sherman Act.

---

[8] In *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986), the Supreme Court held that "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case. . . . [C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." (*citing Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).  Though the Court's ruling in *Matsushita* was made in the context of a motion for summary judgment, the principle is equally applicable to a motion to dismiss. The Court is not bound to conclude that a conspiracy existed simply because the plaintiffs say it did.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.    PLAINTIFFS DO NOT STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT.

Plaintiffs allege that the "price-fixing agreement" of the Defendants constituted an unlawful conspiracy in restraint of trade in violation of Section 1 of the Sherman Act. FAC, ¶ 123.  Section 1 of the Sherman Act prohibits conspiracies "in restraint of trade or commerce." 15 U.S.C. § 1. A Section 1 claim requires: (1) a "contract, combination or conspiracy among two or more persons or distinct business entities"; (2) which is intended to restrain or harm trade; (3) "which actually injures competition"; and (4) harm to the plaintiff from the anticompetitive conduct. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. ) (internal quotation marks omitted), *cert. denied*, 568 U.S. 998 (2012).  "Because § 1 ... does not prohibit all unreasonable restraints of trade but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (alterations, citations, and internal quotation marks omitted); *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir.) ("Section 1, like the tango, requires multiplicity: A company cannot conspire with itself.") (citation omitted), *cert. denied*, 540 U.S. 940 (2003); *The Jeanery, Inc v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) ("Unilateral conduct by a single firm, even if it appears to restrain trade unreasonably, is not unlawful under section 1 of the Sherman Act.") (internal quotation marks and citation omitted); *In re Circuit Breaker Litigation*, 984 F. Supp. 1267, 1276 (C.D. Cal. 1997) (Marshall, J.) ("Collective action is the linchpin of antitrust liability.") (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)).  The FAC is missing the crucial allegation of agreement; it simply alleges unilateral conduct for which Section 1 of the Sherman Act provides no remedy.

### 1.     Tzell and TLG

While the FAC avoids describing the exact relationship between Tzell and TLG, the FAC is clear that Tzell and TLG are part of a single corporate family that is legally incapable of conspiring with itself.   For example, Plaintiffs allege:

- FAC, ¶ 64: "[TLG] and/or Tzell accordingly control 85% of hosted agents associated with a major host agency."

- FAC, ¶ 65: "[TLG] and/or Tzell … control the hosted-agent market in terms of total air sales."

- FAC, ¶ 67: "Defendants [referring to TLG and Tzell], as the largest host agencies … and being one of the only three US TMC host agencies with more than $1 billion in annual air sales – could safely reduce its commission payments (*i.e.* raise prices) without incurring any material risk of losing hosted agents to Ovation or Frosch."

- FAC, ¶ 70: "Tzell is a brand of Defendant Travel Leaders Group, LLC d/b/a Internova ("TLG").

- FAC, ¶ 73: ". . . TLG hosts most of its brands … [and] the TLG brands negotiate collectively with common carriers, rather than negotiating independently."

- FAC, ¶ 96: " . . . ASTG discussed its offer to FlightBlitz with TLG and Tzell's management in New York."

- FAC, ¶ 99: "On information and belief, Tzell and/or TLG objected *because* such percentages would enable FlightBlitz to compete directly against TLG in soliciting

---

**DEFENDANTS' NOTICE OF MOTION AND 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1   Independent Contractors ("ICs")." (emphasis in original).

2   • FAC, ¶ 135: "Tzell and/or TLG, as the largest host
3   agent in the market. . . ."

4   • FAC, ¶ 142: "Tzell/TLG's ability to dictate
5   maximum commission levels . . . demonstrates . . . that
6   Tzell and TLG possessed sufficient market power for
7   restraining commissions being offered downstream."

8   The Supreme Court's 1984 landmark decision in *Copperweld Corp. v.*
9   *Independence Tube Corp.* reiterated that Section 1 does not reach unilateral conduct,
10   and distinguished decades of prior antitrust cases to hold that "the coordinated activity
11   of a parent and its wholly-owned subsidiary must be viewed as that of a single
12   enterprise for purposes of § 1 of the Sherman Act." 467 U.S. at 771. This holding is
13   known as the *Copperweld* doctrine. Even before *Copperweld*, the Ninth Circuit
14   applied the concept in a variety of contexts, not strictly limited to parent-subsidiary
15   relationships.  For example, it also applies to subsidiaries controlled by a common
16   parent, *Thomsen v. W. Elec. Co.*, 680 F.2d 1263, 1265–66 (9th Cir.), *cert. denied*, 459
17   U.S. 991 (1982), firms owned by the same person, *Las Vegas Sun, Inc. v. Summa*
18   *Corp.*, 610 F.2d 614, 618 (9th Cir.1979), *cert. denied*, 447 U.S. 906 (1980), and a firm
19   owned by a subset of the owners of another, *Copperweld*, 467 U.S. at 773 n. 21 (citing
20   *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29 (1962)).
21   It also applies to principal-agent relationships, *Calculators Haw., Inc. v. Brandt, Inc.*,
22   724 F.2d 1332, 1336 (9th Cir. 1983), and to "partnerships or other joint arrangements
23   in which persons who would otherwise be competitors pool their capital and share the
24   risks of loss as well as the opportunities for profit." *Arizona v. Maricopa County Med.*
25   *Soc'y*, 457 U.S. 332, 356 (1982).

26   As the Ninth Circuit explained in *Freeman v. San Diego Ass'n of Realtors*:

27
28

1
2
3
4

> The theme in these cases is economic unity. Where there is substantial common ownership, a fiduciary obligation to act for another entity's economic benefit or an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity.

5   322 F.3d at 1148.  *See also Jack Russell Terrier Network v. Am. Kennel Club, Inc.*,
6   407 F.3d 1027, 1034 (9th Cir. 2005) ("The crucial question is whether the entities
7   alleged to have conspired maintain an 'economic unity,' and whether the entities were
8   either actual or potential competitors."); *Orion Tire Corp. v. General Tire, Inc.,* No.
9   CV 92-239-AAH (EEX), 1992 WL 295224, at *2 (C.D. Cal. Aug. 17, 1992)
10  (complaint failed to state an antitrust claim because, "at most the amended complaint
11  alleges communications between General and two other members of its corporate
12  family—Continental and Semperit."); *Newport Components, Inc. v. NEC Home*
13  *Electronics (U.S.A.), Inc.*, 671 F. Supp. 1525, 1544 n.25 (C.D. Cal. 1987) (sister
14  subsidiaries protected by the *Copperweld* doctrine).

15      As Plaintiffs allege, Tzell is a brand of TLG.  FAC, ¶ 70. Tzell and TLG do not
16  compete; they are part of the same corporate family and share economic unity.  For
17  purposes of the claims here, they are a single entity incapable of conspiring with itself.
18  Without the requisite multiplicity of actors, Plaintiffs' Section 1 claim fails as to Tzell
19  and TLG.

20          **2.      Tzell, TLG and ASTG**

21      The gravamen of the FAC is that Tzell and TLG, as a single unit, conspired
22  with non-party ASTG to suppress Plaintiffs' commissions.  *Id.*, ¶ 77.  During part of
23  the time period covered by the FAC (2015-2019), Plaintiffs allege, "upon information
24  and belief," that ASTG was "a *partially*-owned Tzell branch."  *Id.*, ¶ 96 (emphasis in
25  original).  Later in the FAC, Plaintiffs allege Tzell acquired a 100% stake in ASTG.
26  *Id.*, ¶ 129.  The *Copperweld* doctrine eliminates an actionable Section 1 claim when
27  Tzell owned 100% of ASTG.  The conduct about which Plaintiffs complain in

28

Paragraphs 96-101 of the FAC appears to have occurred when ASTG was partially owned by Tzell. *Id.*, ¶¶ 96-102. The FAC does not disclose the extent of Tzell's ownership in ASTG at that time, though it inconsistently describes Mr. Odaka both as a minority shareholder and the holder of management rights in ASTG. *Id.*, ¶¶ 78, 97, 131.

The Court need not attempt to resolve ASTG's *Copperweld* status in this Motion, because the FAC simply does not allege an agreement between ASTG and Tzell/TLG.[9] Read in the light most favorable to Plaintiffs, the FAC merely alleges that Tzell/TLG "objected" when Mr. Odaka told them about ASTG's oral, handshake deal with FlightBlitz, and that Mr. Odaka later reneged on this oral, handshake deal to make it more favorable to ASTG. FAC, ¶¶ 98-99; 106-107; 131.[10] Tzell/TLG's objection is hardly surprising, given that the 2015 Agreement required ███████ ████████████████████████████████████████████████████████████ ██████████████████████ *See* Exhibit 1. By offering an alternative deal to FlightBlitz with a different ██████ commission structure, ASTG essentially ██████████ ██████████████████

Objecting to a proposed course of action, particularly when the objecting party has a legal right to object, and becoming "visibly irate," are not facts establishing an agreement in restraint of trade. Nor is acting in response to the objection. For example, in *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984), the Supreme Court held that a manufacturer can announce its resale prices in advance and refuse to deal with dealers who do not comply; dealers may independently acquiesce

---

[9] To be clear, Defendants do not concede that ASTG was legally capable of conspiring with Tzell/TLG. It is unnecessary to reach *Copperweld* here because the FAC simply does not allege an agreement between ASTG and Tzell/TLG.

[10] According to the FAC, Plaintiff Kaye also discussed the ASTG/FlightBlitz contract with a Tzell representative. *Id.*, ¶ 131. A Tzell representative, Don Jones, "became visibly irate" when Mr. Kaye told him about ASTG's offer. *Id.*

to avoid termination, without triggering Section 1 liability. *See also Jeanery, Inc.*, 849 F.2d at 1159 (following *Monsanto*). The most that can be gleaned from the FAC is that Tzell/TLG was displeased to learn of the ASTG/FlightBlitz proposal and that Mr. Odaka felt he needed to revise his offer to FlightBlitz in a way that was more economically favorable to ASTG. FAC, ¶¶ 98, 105-107. These unilateral actions do not establish a "meeting of the minds" between Tzell/TLG on the one hand, and ASTG on the other. *See, e.g., Monsanto,* 465 U.S. at 762 ("[T]he fact that a manufacturer and its distributors are in constant communication about prices and marketing strategy does not alone show that the distributors are not making independent pricing decisions."); *Cty. of Tuolumne v. Sonora Comm. Hosp.*, 236 F.3d 1148, 1155-56 (9th Cir. 2001)(letter written on physician's stationery and signed by physician individually, which threatened that he and other physicians might resign from a hospital's medical staff if hospital granted privileges to another physician was not evidence of a conspiracy between physicians and hospital as it did not show evidence of a meeting of the minds).

Tellingly, nothing in the FAC indicates that Tzell/TLG instructed Mr. Odaka to do anything, that Tzell/TLG told or instructed Mr. Odaka what to offer FlightBlitz, that Mr. Odaka and Tzell/TLG agreed on the terms of a new proposal to FlightBlitz, that Mr. Odaka communicated acquiescence to Tzell/TLG, or that Tzell/TLG even knew about, much less agreed with, the revised offer Mr. Odaka presented to FlightBlitz. *See, e.g.*, *Newport Components*, 671 F. Supp. at 1546 (dismissing antitrust claim where plaintiffs failed to allege that a third party communicated its acquiescence in or agreement with the alleged conspiracy). The FAC is silent about Tzell/TLG's actions other than its alleged objection to and displeasure about ASTG's offer to FlightBlitz. FAC, ¶¶ 98-99, 131. Rather, the FAC describes *Mr. Odaka's* unilateral fears about "blacklisting" and how *Mr. Odaka* portrayed the new proposal to FlightBlitz. *Id.*, ¶¶ 105-107. Mr. Odaka's concerns about what *might* happen to

13

ASTG are purely speculative; they do not constitute well-pleaded *factual* allegations showing that Tzell/TLG actually threatened to "blacklist" ASTG, or, if indeed such a threat was made, that Tzell/TLG was prepared to follow through with it.[11]  "Factual allegations must be enough to raise a right to relief above the speculative level," that is, the allegations must provide "plausible grounds to infer an agreement." *Twombly*, 550 U.S. at 555-56.  The FAC simply recounts Mr. Odaka's alleged statements to Mr. Kaye about Mr. Odaka's impressions and beliefs, and Mr. Odaka's own actions; the FAC does not allege that Tzell/TLG did anything other than object to Mr. Odaka's attempt to help FlightBlitz breach its contract with Tzell.  There is no plausible factual allegation of concerted action.

On the contrary, the FAC alleges conduct that is entirely consistent with independent action.  Tzell/TLG objected to ASTG's proposal to FlightBlitz, which directly undermined Tzell's pre-existing contract with FlightBlitz.  Mr. Odaka reformulated his proposal to FlightBlitz to make it economically more favorable to ASTG.  Mr. Odaka characterized this change as something *he* believed *he* needed to do to win Tzell/TLG's approval, but according to Paragraph 107 of the FAC, ASTG, not Tzell/TLG, was the beneficiary of the lower commission splits and tour fare condition in Mr. Odaka's revised proposal to FlightBlitz.  *Id.*, ¶ 107.  Thus, reading the FAC in the light most favorable to Plaintiffs, all that is alleged is that a party with a legal right to do so objected when it found out about an attempted breach of an agreement, which resulted in the proposal being revised in a way that was economically more favorable to ASTG (lower commissions plus access to tour fare contracts).  This is unilateral action, pure and simple, and Plaintiffs have not stated a claim under Section 1 of the Sherman Act.

The Supreme Court's ruling in *Twombly* resonates here:

---

[11] Similarly, Plaintiffs' derogatory characterizations of Defendants as the "mafia" and a "boys' club" do not form well-pleaded *factual* allegations.  FAC, ¶ 128.

14

**DEFENDANTS' NOTICE OF MOTION AND 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1
2
3
4
5
6
7
8
9
10
11

> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

550 U.S. at 557.  The FAC lacks such plausible allegations.  Following Plaintiffs' theory, when Mr. Odaka informed Tzell and TLG about ASTG's proposed deal with FlightBlitz, Tzell and TLG's only options were to remain silent or give their assent; any other response would constitute evidence of an antitrust conspiracy, subjecting them to treble damages.  This is not only unreasonable but also runs afoul of *Twombly*'s holding that "an account of a defendant's commercial efforts" is insufficient to allege a Section 1 claim.  550 U.S. at 557.  *See also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy" are insufficient to plead a § 1 violation.)(*citing Twombly*, 550 U.S. at 553–58 & n. 5).

Plaintiffs may claim that they need discovery to cross the line from possibility to plausibility.  But as the Ninth Circuit recently held in *Whitaker v. Tesla Motors, Inc.*, discovery is not the solution for facially insufficient complaints:

---

15

1
2
3
4
5
6
7
8
9
10

> This argument fails because the Supreme Court has been clear that discovery cannot cure a facially insufficient pleading. *Iqbal* specifically cautioned that 'Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions,' *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937, and *Twombly* went further, observing '[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management ...,' 550 U.S. at 559, 127 S.Ct. 1955 (internal quotation marks and citation omitted). Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery. *Id.*

11
12
13
14

985 F.3d 1173, 1177 (9th Cir. 2021).   Plaintiffs have not alleged a Sherman Act Section 1 claim, and accordingly, this claim should be dismissed without leave to amend.

15

**C.**     **PLAINTIFFS' CARTWRIGHT ACT CLAIM ALSO FAILS.**

16
17
18
19
20
21
22
23
24
25
26
27

Plaintiffs similarly allege that Tzell and TLG's alleged "agreement to restrain prices offered on the open market, made between entities that did not share 100% common ownership" constitutes a "*per se* violation of the Cartwright Act." FAC, ¶ 103. The Cartwright Act prohibits "a combination of capital, skill or acts by *two or more persons*" for an unlawful purpose.  Cal. Bus. & Prof. Code § 16720 (emphasis added).  The elements of this Cartwright Act claim are the formation and operation of the conspiracy and wrongful act or acts done pursuant thereto.  *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 196 (1999) (citations and quotations omitted). "California requires a 'high degree of particularity' in the pleading of Cartwright Act violations . . . . ." *Id.* (citations omitted).  "A conspiracy . . . is a combination of two or more persons by concerted action to accomplish a crime or unlawful purpose." *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 266 (1983) (quotations omitted).

28

16

1   The analysis under the Cartwright Act mirrors the analysis under federal law. *Cty. of Tuolumne*, 236 F.3d at 1160 (*citing Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1091 (9th Cir. 2000); *Mailand v. Burckle*, 20 Cal. 3d 367, 375, 143 Cal. Rptr. 1, 5 (1978)).  *See also Colonial Med. Grp., Inc. v. Catholic Health Care W.*, 444 Fed. Appx. 937, 939 (9th Cir. 2011) ("[T]he requirements for a claim under California's Cartwright Act are identical to those for a claim under the Sherman Act").  Like Section 1 of the Sherman Act, unilateral actions on the part of a single entity do not violate the Cartwright Act.  *Dimidowich v.  Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1985); *Darush v. Revision LP*, No. CV 12-10296-GAF (AGRx), 2013 WL 1749539, at *4-*5 (C.D. Cal. Apr. 10, 2013); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 544 (1994); *G.H.I.I.,* 147 Cal.App.3d at 266, 268; *Bondi v. Jewels By Edwar, Ltd.*, 267 Cal. App. 2d 672, 678 (1968).

As discussed above, Tzell and TLG are a single entity and therefore legally incapable of conspiring in violation of the Cartwright Act.  *Freeman*, 77 Cal. App. 4th at 193. Regarding ASTG, as explained above, the FAC does not allege any concerted action between Tzell and TLG on the one hand, and ASTG on the other. For the same reasons Plaintiffs have not stated a Sherman Act Section 1 claim, they also have not stated a Cartwright Act claim. Accordingly, this claim should also be dismissed without leave to amend.

### D.   PLAINTIFFS' BOYCOTT ALLEGATION ALSO FAILS TO STATE A CLAIM.

To the extent Plaintiffs are alleging an antitrust boycott, this allegation, briefly referenced in Paragraphs 129-130 of the FAC, fails for at least three reasons. First, the boycott allegedly occurred *after* Tzell acquired 100% of ASTG, so under *Copperweld*, it would have been legally impossible for these entities to conspire. FAC, ¶ 129; *Copperweld*, 467 U.S. at 771. Second,  the Sherman Act and the Cartwright Act have long recognized that a private business does not violate the

antitrust laws by exercising its independent discretion to choose the parties with which it will deal and that it may announce in advance the circumstances under which it will refuse to deal. *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *Chavez*, 93 Cal. App. 4th at 372-374 (following *Colgate* and *Monsanto*, and holding as a matter of law that Whirlpool's resale price policy and its refusal to deal with dealers who do not comply, coupled with the dealers' voluntary acquiescence in the policy, did not constitute an implied agreement or unlawful combination). Third, there are no factual allegations whatsoever regarding to whom the "boycott instructions" were allegedly communicated, whether these instructions were enforced, or whether anyone followed them. Plaintiffs have not alleged an actionable boycott.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request this Court dismiss Plaintiffs' First Amended Complaint in its entirety without leave to amend.


Dated:  August 19, 2021              **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                          By:  */s/ Ryan E. Cosgrove*
                              Ryan E. Cosgrove

                              **NELSON MULLINS RILEY & SCARBOROUGH LLP**
                              Denise M. Gunter

                              *Attorneys for Defendants*

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on August 19, 2021, I electronically filed the foregoing

3

document using the CM/ECF system which will send notification of such filing to the

4

e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail

5

Notice List.

6

*/s/ Ryan E. Cosgrove*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28